1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TUAN NGO,

                Plaintiff,

    v.

SENIOR OPERATIONS ,LLC,

                Defendant.

No. C18-1313RSL

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

      This matter comes before the Court on "Defendant's Motion for Summary Judgment." Dkt. # 36. Plaintiff has asserted claims of race, national origin, and age discrimination, hostile work environment, and retaliation against his former employer under the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*. He also asserts claims of wrongful termination in violation of public policy and negligent infliction of emotional distress arising from the same events. Defendant seeks a summary dismissal of all of plaintiff's claims.

      Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda,[1] declarations, and exhibits submitted by the parties[2] and

---

[1] Plaintiff's response memoranda contains factual assertions that are wholly unsupported by the record. For example, counsel asserts that "all supervisors, managers and workers at AMT began referring to Ngo as "Uncle Tom," citing his deposition testimony. Dkt. # 46 at 2. The cited testimony does not support the contention that plaintiff was called "Uncle Tom." Unsupported statements in the memoranda have not been considered

[2] The Court has not considered plaintiff's declaration, which was not cited as support for any arguments or assertions in the response memorandum. The Court has, however, considered the exhibits attached to the declaration to the extent they were cited by the parties.

Defendant suggests that the Court should discount plaintiff's deposition testimony because it is self-serving, uncorroborated, and "unbelievable." Dkt. # 36 at 3; Dkt. # 49 at 2. The record contains self-serving statements from virtually all of the key witnesses. This, standing alone, cannot justify the exclusion of one side's declaration and the adoption of the other. Testimony will often be self-serving – "otherwise there would be no point in [a party] submitting it." *U.S. v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). Unless testimony is conclusory or states only facts not within the personal knowledge of

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -2-

1  taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

2  **BACKGROUND**

3  Plaintiff, a U.S. citizen born in Vietnam, began working at Senior Operations, LLC, d/b/a

4  AMT Senior Aerospace, Inc. (hereinafter, "AMT") in 2006. Plaintiff changed work areas and

5  supervisors over the years, but he was primarily responsible for working with computer-

6  controlled heavy machinery to produce aerospace structural parts. He was generally happy at

7  AMT, although he found it racist and offensive that his co-workers, leads, and supervisors

8  insisted on calling him "Tommy" - even after he objected - instead of using his real name.

9  Sometime after June 2011, Lawrence Evans became plaintiff's lead. AMT uses leads as

10 points of contact between management and the crew: they assign work, communicate goals and

11 information, and oversee the safety, organization, and cleanliness of the work area. Whenever

12 his assignments put plaintiff under Evans' supervision, trouble followed. The first documented

13 issue arose in August 2016, when Evans accused plaintiff of refusing to train a co-worker and

14 failing to treat the co-worker with respect. Plaintiff tried to explain that he was perfectly willing

15 to train the co-worker (as he had numerous other employees), but that he was not willing to write

16 down how to perform the work because his job description did not include writing manuals and

17 he did not want to be responsible for any errors or omissions. Evans did not respect plaintiff's

18 efforts to explain, instead accusing plaintiff of yelling at him. Plaintiff pointed out that it was

19 loud in the shop, he was wearing earplugs, and that he did not mean to yell. When plaintiff stated

20 that "it's maybe my culture is talking loud too," Evans responded "your stupid culture" and

21 walked away. Dkt. # 37-1 at 32. Evans gave plaintiff a written warning that he "must be willing

22 to train people when asked in a positive manner and be willing to demonstrate team work skills

23 _____

24 the declarant, the self-serving nature of testimony goes to its credibility, not to its admissibility. *SEC v.*
   *Phan*, 500 F.3d 895, 909 (9th Cir. 2007). *See also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054

25 (9th Cir. 2002) (declaration provided no indication that the declarant knew her uncorroborated factual
   assertions were true and was therefore disregarded). The Court will not make credibility judgments in

26 the context of a Rule 56 motion.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -3-

1    when working with others" or risk termination. Dkt. # 41-1 at 2.

2        Plaintiff believed that Evans was trying to get him in trouble and set him up for

3    termination because he is Vietnamese. Dkt. # 37-1 at 42. He complained to the Human

4    Resources Manager, Audrey Eustice, and the Director of Operations, Matthew Boily, that Evans

5    was discriminating against him, harassing him, mistreating him, and making false accusations.

6    Dkt. # 37-1 at 14-15 and 28-31. He asked that he be transferred away from Evans, but Boily

7    refused. Plaintiff asserts that Boily treated him differently than others in this respect, noting that

8    when other co-workers had conflicts with each other, they were separated and that Boily was

9    effectively protecting the harasser and enabling the harassment to continue. Dkt. # 37-1 at 14

10   and 30-31.

11       Plaintiff asserts that Evans sabotaged his work,[3] taunted him about his size/strength,

12   demanded that plaintiff report to him whenever he left his work station, ignored requests for

13   assistance, insulted/teased him because of his Vietnamese accent, and generally treated plaintiff

14   differently than other workers on his team. Plaintiff attributes this mistreatment to his

15   race/national origin and an effort to retaliate for his 2016 complaint to Human Resources.

16   Plaintiff alleges that Evans' efforts to get rid of plaintiff culminated in his lodging a pretextual

17   safety complaint in January 2018. While there is no doubt that plaintiff rotated a pallet while

18   Evans was in the zone of danger and that this conduct violated AMT's safety policies, plaintiff

19   states that this was a common practice at AMT. According to plaintiff (and at least one other

20   witness), people in the danger zone often ask the person operating the machinery to rotate the

21   pallet without leaving the area: they would simply dodge to the side where the alarm sensor

22   could not detect them. When plaintiff questioned this practice, his superiors, including lead

23   Evans and supervisor Josh Davis, told him not to worry about it because if they followed the

24

25       [3] Plaintiff states that Evans would tell him to do something in a way that contradicted what their supervisor, Scott Erdmann, had said and threatened to write him up for insubordination if he
26   complained.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -4-

1   safety protocols, they would never keep up with the production work. Plaintiff acknowledged

2   that he had previously rotated pallets while people were in the danger zone and recounted that

3   others - Evans and Davis included - had rotated pallets while he was in the danger zone.

4   According to plaintiff, there was nothing unique or different about what happened that day in

5   January 2018 except that Evans saw it as a chance to get plaintiff in trouble. While the lower

6   level supervisors who allegedly sanctioned this unsafe practice were inclined to give plaintiff a

7   warning and counseling, Evans' report reached the Director of Operations, Boily, who decided

8   that the breach of safety protocols was extreme and terminated plaintiff's employment with

9   AMT immediately.

10          With regards to his claim of age discrimination, plaintiff asserts that Davis asked him

11  about his pay grade at his first review after plaintiff began working for Davis. When plaintiff

12  told him, Davis commented that he could hire two young employees at that rate who would do a

13  better job than plaintiff. Plaintiff also asserts that, when Boily became Director of Operations, he

14  began culling older employees who had accrued benefits and significant vacation time in order

15  to cut costs.

16                                      **DISCUSSION**

17  **A. Hostile Work Environment**

18          The WLAD not only protects employees from discriminatory adverse employment

19  actions, it also precludes less drastic alterations in the conditions of employment caused by

20  pervasive discriminatory attitudes in the workplace. If the workplace is permeated with

21  discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

22  the conditions of plaintiff's employment and create an objectively and subjectively abusive

23  working environment, the WLAD is violated. Plaintiff argues that he was subjected to a hostile

24  work environment by Evans on account of his race or national origin in violation of RCW

25  49.60.180(3). To succeed on a hostile work environment claim, an employee must demonstrate

26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -5-

1    four elements: that the harassment (1) was unwelcome, (2) was because of a protected

2    characteristic, (3) affected the terms or conditions of employment, and (4) is imputable to the

3    employer. *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07 (1985).

4         AMT argues that plaintiff cannot establish any of the elements of a hostile work

5    environment claim. AMT asserts that plaintiff invited everyone to call him "Tommy" or "Uncle

6    Tommy," making that conduct welcome, and that any awkwardness or unpleasantness between

7    Evans and plaintiff was caused by plaintiff's insubordination and/or recklessness, not his race or

8    national origin. There is evidence, however, that plaintiff was given the name "Tommy" when he

9    started working at AMT, that his objections to the nickname were ignored, that co-workers

10   marked cockroaches with "Uncle Tommy" and left them in plaintiff's work station, that Evans

11   disparaged Vietnamese culture, and that many of Evans' taunts could reasonably be construed as

12   directly or indirectly tied to plaintiff's Vietnamese heritage. Plaintiff has raised a genuine issue

13   of fact regarding the first two elements of a hostile work environment claim.

14        The third element requires that "[t]he harassment must be sufficiently pervasive so as to

15   alter the conditions of employment and create an abusive working environment." *Glasgow*, 103

16   Wn.2d at 406. Whether harassing conduct is "severe and persistent" enough to affect the terms

17   and conditions of employment must be determined "with regard to the totality of the

18   circumstances." *Blackburn v. State*, 186 Wn.2d 250, 261 (2016) (quoting *Glasgow*, 103 Wn.2d

19   at 406-07). Plaintiff asserts not only that he had to ask permission to get something to drink or to

20   use the restroom, was taunted about his size/strength and accent, was refused assistance, and was

21   constantly called by an unwelcome nickname, but also that Evans sabotaged his work and lied

22   about their interactions in the hopes of getting plaintiff in trouble. This conduct ultimately

23   resulted in the termination of plaintiff's employment, a clear alteration in the terms and

24   conditions of employment. Plaintiff has raised a triable issue of fact as to the third element.

25        Proof necessary to establish that the harassment can be imputed to the employer varies

26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -6-

1  depending on the identity/position of the harasser. "Where an owner, manager, partner or

2  corporate officer personally participates in the harassment, this element is met by such proof. To

3  hold an employer responsible for the discriminatory work environment created by a plaintiff's

4  supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew,

5  or should have known of the harassment and (b) failed to take reasonably prompt and adequate

6  corrective action." *Glasgow*, 103 Wn.2d at 407. "The two-part rule for imputing harassment

7  suggests that there is some difference between managers and, collectively, supervisors and

8  co-workers. . . . [T]o automatically impute harassment to an employer, the manager's rank in the

9  company's hierarchy must be high enough that the manager is the employer's alter ego." *Davis*

10  *v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 362-63 (2012) (internal citations omitted).

11       Plaintiff presents no evidence to rebut AMT's showing that Evans is essentially a

12  supervisor who organizes and oversees only the crew he leads. While Evans undoubtedly had the

13  power to impact plaintiff's working conditions, he could not hire or fire employees, did not

14  manage any departments or operations, and cannot reasonably be viewed as the employer's alter

15  ego. Plaintiff has presented evidence, however, that when Evans issued his first allegedly

16  fabricated written warning in August 2016 plaintiff went to the Human Resources Manager and

17  the Director of Operations to complain that he was being harassed, mistreated, and discriminated

18  against by Evans.[4] Taking the evidence in the light most favorable to plaintiff, the employer

19  knew or should have known of the harassment at that point. There is no indication that AMT

20  investigated these allegations or took reasonably prompt and adequate corrective action: in fact,

21  plaintiff's affirmative request for an assignment away from Evans was rejected. AMT, for its

22  part, asserts that plaintiff never contacted Human Resources or Boily and that his August 2016

23  

24      [4] At one point, plaintiff apparently told his supervisor, Erdmann, "how Lawrence discriminate

25  and harass me, working different than you direct me to do." Dkt. # 45-3 at 26. Assuming Erdmann
would reasonably have interpreted this complaint to involve discrimination based on race/national

26  origin, there is no indication that he was the employer's alter ego.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT     -7-

1   objection to the written warning challenged only the factual accuracy of Evans' accusation. The

2   Court cannot resolve this factual dispute in the context of a Rule 56 motion. If the jury were to

3   believe plaintiff's version of events, it could reasonably find that AMT, through the acts of its

4   managers, knew and/or should have known of Evans' harassment of plaintiff and that its

5   investigation and remedial action were not of such a nature to have been reasonably calculated to

6   end the harassment. Such findings would satisfy the imputed-to-employer prong of the hostile

7   work environment test. *See Robel v. Roundup Corp.*, 148 Wn. 2d 35, 48 (2002).

8   **B. Race, National Origin, and/or Age Discrimination**

9        Under the WLAD, it is an unfair practice for an employer to discharge or discriminate

10  against an employee in the terms or conditions of employment on the basis of race, national

11  origin, or age. RCW 49.60.180(2) and (3). At trial, plaintiff will ultimately have to prove that

12  race, national origin, and/or age was a "substantial factor" in AMT's decision to terminate his

13  employment, which is the only adverse employment action identified. *Mackay v. Acorn Custom*

14  *Cabinetry, Inc.*, 127 Wn.2d 302, 310 (1995). A "substantial factor" means that the protected

15  characteristic was a significant motivating factor in AMT's decision: it does not have to be the

16  sole reason for the decision. *Mackay*, 127 Wn.2d at 310-11. An employer may be motivated by

17  both legitimate and illegitimate reasons: it does not escape liability under the WLAD simply

18  because only some of its justifications were illegal. *Scrivener v. Clark Coll.*, 181 Wn.2d 439,

19  447 (2014). To hold otherwise would be contrary to Washington's "resolve to eradicate

20  discrimination" and would warp this resolve into "mere rhetoric." *Mackay*, 127 Wn.2d at 309-

21  10. When the record contains reasonable but competing inferences of both discrimination and

22  nondiscrimination, the trier of fact must determine the true motivation. *Riehl v. Foodmaker, Inc.*,

23  152 Wn.2d 138, 149 (2004)*; Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 90 (2012).

24

25

26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -8-

1

### 1. Race and National Origin Discrimination

2
As discussed above, plaintiff has presented direct evidence of discriminatory animus

3 toward Vietnamese culture on the part of his lead,[5] as well as frequent insults and taunts that one

4 might reasonably conclude were related to plaintiff's race/national origin. In the context of this

5 direct evidence of antipathy toward plaintiff's race/national origin, a jury could find that

6 unwelcome race-neutral statements and conduct - such as requiring plaintiff to get permission to

7 use the restroom, ignoring his requests for assistance, or issuing written warnings for workplace

8 transgressions - were in fact motivated by a protected characteristic.

9
AMT argues that, even if plaintiff has raised a factual issue regarding Evans' motivations,

10 Evans was not the decision maker in plaintiff's termination, and that plaintiff has not shown that

11 Boily was motivated by race or national origin discrimination when he decided that plaintiff's

12 safety protocol violation warranted termination. Plaintiff has, however, presented evidence from

13 which a reasonable jury could find AMT liable under the subordinate bias/cat's paw theory of

14 liability.

15
In *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), the [U.S.] Supreme Court

16 confronted the problem where the official who made the decision to take an
adverse employment action "has no discriminatory animus but is influenced by

17 previous company action that is the product of a like animus in someone else."
There, the plaintiff, a member of the Army Reserve, was fired and sued his

18 employer under the Uniformed Services Employment and Reemployment Rights
Act of 1994 (USERRA). *Staub*, 131 S. Ct. at 1190. He alleged that his supervisor's

19 antimilitary animus influenced his employer's decision to terminate him. *Staub*,

20 131 S. Ct. at 1. The Court held that "if a supervisor performs an act motivated by
antimilitary animus that is intended by the supervisor to cause an adverse

21 employment action, and if that act is a proximate cause of the

22 ultimate-employment action, then the employer is liable under USERRA." *Staub*,

23 131 S. Ct. at 1194 (footnotes omitted).

24

25
[5] "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)

26 (alteration in original).

1
2
3
4
5
6

> The Court also stated that an independent investigation does not necessarily relieve the employer of liability for an adverse employment action. *Staub*, 131 S. Ct. at 1193. "[I]f the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action ... then the employer will not be liable." *Staub*, 131 S. Ct. at 1193. "But if the independent investigation relies on facts provided by the biased supervisor – as is necessary in any case of cat's-paw liability – then the employer (either directly or through the ultimate decision maker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor." *Staub*, 131 S. Ct. at 1193.

7
8
9
10
11
12
13
14
15
16
17

*Boyd v. State, Dep't of Soc. & Health Servs.*, 187 Wn. App. 1, 17-18 (2015). Here, as in *Boyd*, plaintiff presented evidence of Evans' animus. Evans' subsequent report of an unsafe practice that everyone, including Evans, had engaged in was reviewed by Boily and prompted an investigation into other missteps plaintiff may have made. Evans' report was not critically evaluated or tested: it was apparently accepted as true and led without any independent, intervening cause to plaintiff's termination. AMT relied on Evans' representations of fact in initiating the inquiry and terminating plaintiff. Thus, a reasonable jury could find that Evans' acts were a substantial (if not the primary) factor in the termination and that Boily's review of Evans' complaint did not break the causal connection between the latter's animus and the adverse employment action. This is enough to raise a triable issue of fact under Washington law.

## 2. Age Discrimination

18
19
20
21
22

Plaintiff states that his supervisor once commented that, at plaintiff's pay rate, he could replace him with two younger employees who would do a better job. A single comment temporally separate from and entirely unrelated to plaintiff's termination cannot establish the elements of a disparate treatment claim.

23
24
25
26

Plaintiff also states that Boily targeted older employees in order to reduce costs, finding reasons to terminate long-term AMT employees who had accrued benefits and vacation when he became Director of Operations. Plaintiff identifies seven people over the age of 40, including himself, who were terminated by Boily. The Court assumes, for purposes of this motion, that

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -10-

1   plaintiff has established "a prima facie case of age discrimination by showing  that (1) []he was

2   within a statutorily protected class, (2) []he was discharged by the defendant, (3) []he was doing

3   satisfactory work, and (4) after [his] discharge, the position remained open and the employer

4   continued to seek applicants with qualifications similar to the plaintiff." *Mikkelsen v. Pub. Util.*

5   *Dist. No. 1 of Kittitas Cty.*, 189 Wn. 2d 516, 527 (2017). AMT has articulated a legitimate,

6   nondiscriminatory reason for terminating plaintiff's employment, however, namely a violation of

7   AMT's safety protocols. Plaintiff asserts that this justification was merely a pretext and that

8   Boily actually fired him because of his age. The only evidence provided is the list of names of

9   individuals over 40 who were terminated. Standing alone, the list is insufficient to show pretext

10  or to otherwise raise an inference that age was a substantial factor motivating the decision to

11  terminate plaintiff's employment. Plaintiff does not provide any information regarding the time

12  frame in which these terminations occurred, the percentage of the workforce the seven

13  employees represent, how many terminations of individuals outside the protected class occurred

14  during the same time period, or the circumstances under which the other employees were

15  terminated. Plaintiff has not presented sufficient evidence to raise a triable issue of fact

16  regarding his age discrimination claim.

17  **C. Retaliation**

18       Plaintiff asserts that Evans sabotaged, insulted, and taunted him in retaliation for his

19  complaint of discrimination and mistreatment in August 2016. To prove a claim of retaliation,

20  plaintiff must show that (a) he engaged in statutorily protected activity, (b) there was an adverse

21  employment action, and (c) retaliation was causally connected to or a substantial factor

22  motivating the adverse action. *Kahn v. Salerno*, 90 Wn. App. 110, 128-29 (1998). Once a prima

23  facie case of retaliation is presented, the burden shifts to defendant to articulate a legitimate,

24  non-retaliatory reason for the adverse employment action. *Renz v. Spokane Eye Clinic, P.S.*, 114

25  Wn. App. 611, 618 (2002). Plaintiff bears the ultimate burden of persuasion, however, and must

26

1   raise an inference of retaliation to withstand a motion for summary judgment.

2          Plaintiff states that he complained of discrimination and mistreatment at the hands of his

3   lead, Evans, in August 2016. Such conduct is statutorily protected, and he asserts that Evans

4   belittled, taunted, and insulted him thereafter, culminating in the January 2018 report.[6] Although

5   there is a significant temporal delay between the August 2016 complaint and the January 2018

6   termination, where retaliatory conduct was on-going and escalated into an adverse employment

7   action, plaintiff has raised a triable issue of fact regarding a causal connection between the

8   protected activity and the adverse action.

9   **D. Violation of Public Policy**

10          AMT argues that plaintiff should be precluded from pursuing a wrongful discharge in

11   violation of public policy claim where the alleged wrongful conduct is the same conduct on

12   which the WLAD claim is based. Defendant asserts that a bar is appropriate because the tort

13   claim is duplicative of the statutory claim.[7] The tort of wrongful discharge in violation of public

14   policy and the WLAD claim overlap only to the extent that the WLAD provides the legislative

15   statement of public policy on which the wrongful discharge claim is based. The two claims are

16   not duplicative as to their elements and may have different outcomes. It is entirely possible that

17   one may succeed on one claim, but not on the other. In *Roberts v. Dudley*, 140 Wn.2d 58 (2000),

18   for example, a WLAD claim could not succeed because the employer was not subject to the act,

19   but the common law tort of wrongful discharge was permitted to proceed based on the public

20   policy set forth in the inapplicable statute. AMT has not identified, and the Court has not found,

21   a state court case in which a wrongful discharge claim was dismissed because plaintiff had

22   asserted a WLAD claim. To the contrary, before the Supreme Court mistakenly imported a strict

23   _____

24          [6] Plaintiff also states that Evans had previously threatened to write him up for insubordination if
     he complained to their supervisor about Evans.

25

26          [7] In reply, AMT abandoned its argument that there is no clear mandate of public policy at issue.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -12-

1    adequacy requirement into the tort, state courts regularly heard both claims in the same case. *See*

2    *Bennett v. Hardy*, 113 Wn.2d 912 (1990); *Anaya v. Graham*, 89 Wn. App. 588, 595 (1998)

3    (noting that a termination in violation of the public police against discrimination in employment

4    set forth in the WLAD "may provide an exception to the general rule of employment at will,

5    giving rise to an action for wrongful discharge").[8] To the extent AMT fears a double recovery if

6    the jury were to find in plaintiff's favor on both the WLAD and the wrongful discharge claim,

7    those concerns can be allayed through a well-crafted verdict form and/or the remittitur process.

8    **E. Negligent Infliction of Emotional Distress**

9          Under Washington law, a defendant "has a duty to avoid the negligent infliction of mental

10   distress," and the duty can apply in the workplace. *Hunsley v. Giard*, 87 Wn.2d 424, 435 (1976);

11   *Chea v. Men's Wearhouse, Inc.*, 85 Wn. App. 405, 412 (1997). Where the conduct of which

12   plaintiff complains involves the resolution of workplace disputes, however:

13   
14          [t]he employers, not the courts, are in the best position to determine whether such
            disputes should be resolved by employee counseling, discipline, transfers,
15          terminations or no action at all. While such actions undoubtedly are stressful to
            impacted employees, the courts cannot guarantee a stress-free workplace.
16          Therefore, . . . absent a statutory or public policy mandate, employers do not owe
            employees a duty to use reasonable care to avoid the inadvertent infliction of
17          emotional distress when responding to workplace disputes.

18   *Bishop v. State*, 77 Wn. App. 228, 234-35 (1995). To the extent plaintiff is arguing that the way

19   AMT investigated or responded to Evans' written warnings and reports caused him stress, the

20   employer was under no duty to avoid such an outcome under Washington law.

21         To the extent plaintiff is alleging that AMT violated the WLAD and/or the public policy

22   
23         [8] A number of federal court decisions have held or implied that, because a wrongful discharge
24   claim is based on a public policy set forth in the WLAD, the claims are duplicative and the tort claim
     must be dismissed. *See, e.g., Cooper v. Univ. of Wash.*, C06-1365RSL, 2007 WL 3356809, at *6 (W.D.
25   Wash. Nov. 8, 2007). Many of these decisions reflect the now-rejected view that if adequate relief were
     available under another statute, the wrongful discharge claim was unnecessary and the jeopardy element
26   was unsatisfied.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -13-

1  against discrimination in the workplace, a duty clearly exists. The Washington Court of Appeals

2  has noted, however, that a negligent infliction of emotional distress claim based on the same

3  facts that give rise to the WLAD claim may be duplicative because emotional distress damages

4  are recoverable under the WLAD. "Because the law will not permit a double recovery, a plaintiff

5  will not be permitted to be compensated twice for the same emotional injuries." *Francom v.*

6  *Costco Wholesale Corp.*, 98 Wn. App. 845, 864-65 (2000). This line of reasoning has been

7  followed only sparingly in the state courts, and a number of judges of this district doubt that a

8  mere potential for double recovery warrants dismissal of an otherwise adequately pled claim.

9  The Honorable John C. Coughenour, for instance, discusses *Francom* before noting that:

> this issue relates to an award of damages, not the submission of an alternative legal
> theory to the factfinder. *See Robinson v. Pierce Cnty.*, 539 F. Supp.2d 1316, 1332
> (W.D. Wash. 2008) ("[T]he Court declines to dismiss [Plaintiff's] negligent
> supervision claim merely because it relies on the same factual allegations as his
> discrimination claim."); *Nygren v. AT&T Wireless Servs., Inc.*, Case No.
> C03-3928-JLR, Dkt. No. 63, at 2 (W.D. Wash. May 16, 2005) (stating that
> *Francom* does not require the court to dismiss the emotional distress claims, but
> instead establishes that a plaintiff "cannot win 'double recovery' under
> discrimination and negligence theories"). Until such a time as Plaintiff is granted
> judgment on the WLAD claims, Defendants' concerns regarding a double recovery
> are premature. *See Maxwell v. Virtual Educ. Software, Inc.*, Case No.
> C09-0173-RMP, 2010 WL 3120025, at *11 (E.D. Wash. Aug. 6, 2010) (until
> judgment is granted on a discrimination claim, the issue of a double recovery is
> prematurely asserted). The Court declines to dismiss the Intentional Infliction of
> Emotional Distress claims.

*Neravetla v. Virginia Mason Med. Ctr.*, No. C13-1501-JCC, 2014 WL 12787979, at *5 (W.D.

Wash. Feb. 18, 2014). The Court similarly declines to dismiss the emotional distress claim

simply because it raises the specter of a double recovery. Parties are permitted to assert claims in

the alternative, and any concerns regarding the appropriate calculation of damages at trial can be

addressed in the verdict form or, if need be, the remittitur process.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -14-

1         For all of the foregoing reason, defendant's motion for summary judgment (Dkt. # 36) is

2    GRANTED in part and DENIED in part. Plaintiff's age discrimination claim is hereby

3    DISMISSED.

4

5         Dated this 22nd day of May, 2020.

6                                                 _____

7                                              Robert S. Lasnik
                                          United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT       -15-